**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JIANHUA LI,

Plaintiff,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,

Defendants.

Case No. 1:25-CV-00002-RC

**DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants hereby file this Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The grounds for this motion are set forth in the accompanying memorandum of points and authorities. A proposed order is also attached.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director

ALESSANDRA FASO
Acting Assistant Director

By: */s/ Erika Arce-Romero*
ERIKA ARCE-ROMERO
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 307-4469
Fax: (202) 305-7000
e-Mail: erika.arce-romero2@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

By: /s/ *Erika Arce-Romero*
Erika Arce-Romero
Trial Attorney
United States Department of Justice
Civil Division

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JIANHUA LI,

Plaintiff,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*,

Defendants.

Case No. 1:25-CV-00002-RC

**MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

BRETT A. SHUMATE
Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director

ALESSANDRA FASO
Acting Assistant Director

By: */s/ Erika Arce-Romero*
ERIKA ARCE-ROMERO
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 307-4469
Fax: (202) 305-7000
e-Mail: erika.arce-romero2@usdoj.gov

*Attorneys for Defendant*

## TABLE OF CONTENT


INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 2

A. Statutory and Regulatory Background ........................................................ 2

B. Factual and Procedural Background ........................................................ 5

STANDARDS OF REVIEW ........................................................ 14

A. Summary Judgment ........................................................ 14

B. Review Under the APA ........................................................ 14

ARGUMENT ........................................................ 16

I. The agency's decision is supported by substantial evidence in the record. .................. 16

A.. Plaintiff failed to establish that the funds he acquired to purchase his home, which was used to obtain a loan for purposes of the EB-5 investment, were lawfully obtained. ............... 17

B. The record contains insufficient documentation demonstrating that the third-party exchanger is a lawful source. ........................................................ 22

C. Plaintiff failed to meet the regulatory requirements necessary for EB-5 eligibility. .... 29

CONCLUSION ........................................................ 32

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Alegent Health-Immanual Med. Ctr. v. Sebelius*,
34 F. Supp. 3d 160 (D.D.C. 2014) ........ 16

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ........ 14

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. Of Governors of Fed. Rsrv. Sys.*,
745 F.2d 677 (D.C. Cir. 1984) ........ 15

*Battineni v. Mayorkas*,
752 F. Supp. 3d 195 (D.D.C. 2024) ........ 26, 27

*Biestek v. Berryhill*,
587 U.S. 97 (2019) ........ 16, 17

*Borushevskyi v. USCIS*,
664 F. Supp. 3d 117 (D.D.C. 2023) ........ passim

*Borushevskyi v. USCIS*,
No. 23-5116, 2024 WL 2762146 (D.C. Cir. May 30, 2024) ........ 17

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281 (1974) ........ 15

*Cherokee Nation v. U.S. Dep't of the Interior*,
531 F. Supp. 3d 87 (D.D.C. 2021) ........ 14

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........ 15

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966) ........ 16

*CS-360, LLC v. U.S. Dep't of Veterans Affairs*,
101 F. Supp. 3d 29 (D.D.C. 2015) ........ 14

*Fla. Pwr & Light Co. v. Lorion*,
470 U.S. 729 (1985) ........ 14, 16

*Glob. Tropical Imports & Exports LLC v. Bernhardt*,
366 F. Supp. 3d 110 (D.D.C. 2019) ........ 15

*Hagelin v. Fed. Election Comm'n*,
411 F.3d 237 (D.C. Cir. 2005) ........................................................................................ 15

*Jian Zhang v. Nielsen*,
No. CV 18-9799-JFW (JPRX), 2019 WL 5303276 (C.D. Cal. Oct. 17, 2019) .................. 19, 20

*Kara v. USCIS,*
No. 20-cv-20611, 2020 WL 7711661 (S.D. Fla. Dec. 29, 2020) ..................................... 5, 6, 18

*Kornman v. S.E.C.*,
592 F.3d 173 (D.C. Cir. 2010) ........................................................................................ 16

*Le v. USCIS*,
No. 21-cv-501, 2025 WL 1743942 (D.D.C. June 24, 2025) ........................................ 23, 26, 28

*Lei v. USCIS*,
No. CV 15-9654 FMO (PJWx), 2017 WL 5957641 (C.D. Cal. Mar. 23, 2017) ................. 19, 22

*Matter of Ho*,
22 I. & N. Dec. 206 (Assoc. Comm'r 1998) ...................................................................... 4

*Matter of Hsiung*,
22 I. & N. Dec. 201 (Assoc. Comm'r 1998) ...................................................................... 4

*Matter of Izummi*,
22 I. & N. Dec. 169 (Assoc. Comm'r 1998) ............................................................ 4, 23, 30

*Matter of Soffici*,
22 I. & N. Dec. 158 (Assoc. Comm'r 1998) ....................................................... 4, 20, 21, 23

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ...................................................................................................... 14, 22

*Nguyen v. USCIS*,
637 F. Supp. 3d 822 (C.D. Cal. 2022) ................................................................... 24, 25, 26

*Phoenix Herpetological Soc'y, Inc. v. U.S. Fish & Wildlife Serv.*,
998 F.3d 999 (D.C. Cir. 2021) ........................................................................................ 15

*R.L. Inv. Ltd. Partners v. INS*,
86 F. Supp. 2d 1014 (D. Hawaii 2000) ............................................................................... 4

*Sadeghzadeh v. USCIS*,
322 F. Supp. 3d 12 (D.D.C. 2018) ....................................................................... 4, 18, 20, 31

*Sagarwala v. Cissna*,
387 F. Supp. 3d 56 (D.D.C. 2019) ........ 21
*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*,
789 F.2d 26 (D.C. Cir. 1986) ........ 15
*Saunders v. Kijakazi*,
6 F.4th 1 (D.C. Cir. 2021) ........ 17, 28
*Sec'y of Lab. V. Knight Hawk Coal, LLC*,
991 F.3d 1297 (D.C. Cir. 2021) ........ 15
*Spencer Enters. v. United States*,
229 F. Supp. 2d 1025 (E.D. Cal. 2001) ........ 3, 23
*Sun v. USCIS*,
No. 21-1612 (CKK), 2025 WL 947463 (D.D.C. Mar. 28, 2025) ........ 29
*Truong v. USCIS*,
No. 21-316 (RC), 2022 WL 17356865 (D.D.C. Dec. 1, 2022) ........ 23, 27
*Truong v. USCIS*,
No. 21-316 (RC), 2023 WL 4234658 (D.D.C. June 28, 2023) ........ 20, 22, 23, 27
*Zhang v. USCIS*,
344 F. Supp. 3d 32 (D.D.C. 2018) ........ 18
*Zhou v. Noem*,
No. 19-2650 (TJK), 2025 WL 416152 (D.D.C. Feb. 6, 2025) ........ 28

**Statutes**

5 U.S.C. § 702 ........ 14
5 U.S.C. § 706(2)(A) ........ 14
5 U.S.C. § 706(2)(E) ........ 15
8 U.S.C. § 1153(b)(5) ........ 2, 4
8 U.S.C. § 1153(b)(5)(A) ........ 2
8 U.S.C. § 1153(b)(5)(B) ........ 2
8 U.S.C. § 1153(b)(5)(C) ........ 2
8 U.S.C. § 1153(b)(5)(L) ........ 4
8 U.S.C. § 1361 ........ 21

18 U.S.C. § 2315 .......... 18
Pub. L. No. 101-649 .......... 2

**Rules**

Fed. R. Civ. P. 56(a) .......... 14

**Regulations**

8 C.F.R. § 103.3(c) .......... 4
8 C.F.R. § 204.6 .......... 2
8 C.F.R. § 204.6(a) .......... 29
8 C.F.R. § 204.6(e) .......... 3, 18
8 C.F.R. § 204.6(f) (2016) .......... 2
8 C.F.R. § 204.6(g)(1) .......... 3
8 C.F.R. § 204.6(j) .......... passim
8 C.F.R. § 204.6(j)(3) .......... passim
8 C.F.R. § 204.6(j)(3)(ii) .......... 30, 31
8 C.F.R. § 205.6(e) .......... 2
56 Fed. Reg. 60897 .......... 2, 17

# INTRODUCTION

Defendants hereby submit this opposition to Plaintiff's Motion for Summary Judgment, ECF No. 12, and cross move for summary judgment on all counts. Plaintiff seeks review of the United States Citizenship and Immigration Services' ("USCIS"), Immigrant Investor Program Office's ("IPO") denial of his Form I-526, Immigrant Petition by Standalone Investor.

At issue is USCIS's determination that Plaintiff did not establish, by a preponderance of the evidence, that the capital used to fund his EB-5 investment derived from a lawful source. USCIS correctly determined that the record as a whole does not sufficiently document the path of funds from Plaintiff's earned income, which allegedly funded the purchase of his property, which in turn allowed him to acquire a loan from his mortgage company. In addition to failing to provide proof of his accumulated savings, Plaintiff failed to demonstrate that he paid in full the mortgage loan he was indebted to before the bank. Such proof would extinguish doubt that the money that was invested in the United States is in fact Plaintiff's money, and not that of the bank. And even if Plaintiff demonstrated that the loan was paid off, Plaintiff failed to establish that he derived his capital—specifically the U.S. dollars—from a lawful source because of the break in chain that took place after Plaintiff transferred his funds through a third-party exchanger. Lastly, Plaintiff failed to demonstrate that the capital used to fund the investment derives from a lawful source as he failed to follow the explicit regulatory requirement that he submit his personal income taxes to USCIS. In this litigation, however, Plaintiff, focuses on one basis for his denial: whether the US dollars he obtained and transferred through a third-party exchanger were obtained through lawful means. Because USCIS's denial is firmly supported by the record on multiple grounds, this Court should deny Plaintiff's Motion in its entirety and grant summary judgment for Defendants.

## BACKGROUND

### A. Statutory and Regulatory Background

As part of the Immigration Act of 1990, Congress established the employment-based, fifth preference ("EB-5") immigrant investor visa program. *See* Pub. L. No. 101-649, § 121(a) (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)). Now, within the Immigration and Nationality Act ("INA"), under the EB-5 program, lawful permanent resident ("LPR") status is available to foreign nationals who invest at least $1,050,000 in a new commercial enterprise ("NCE") that will create at least ten full-time jobs in the United States. *See* 8 U.S.C. § 1153(b)(5)(A). Congress intended for the EB-5 visa program to provide a unique path for foreign national investors to immigrate permanently to the United States by making legitimate investments, creating new employment for U.S. workers, and infusing new, lawfully acquired capital into the country. *See* S. Rep. No. 101-55 at 21 (1989). If a foreign national invests in an NCE located in a Targeted Employment Area ("TEA") or in an infrastructural project, which includes certain rural areas and areas of high unemployment, the minimum required investment is reduced to $800,000. *See* 8 U.S.C. § 1153(b)(5)(B); *see also* 8 U.S.C. § 1153(b)(5)(D)(viii); 8 C.F.R. § 205.6(e).[1]

In 1991, the former Immigration and Naturalization Service ("INS") published regulations interpreting and administering the EB-5 statute and establishing procedures for foreign investors to file I-526 petitions for classifications as EB-5 immigrant entrepreneurs. *See* 56 Fed. Reg. 60897, 60910-13 (Nov. 29, 1991) (codified at 8 C.F.R. § 204.6). The regulations mandate that foreign investors provide evidence that they have invested, or are actively in the process of investing, lawfully obtained capital in a NCE that will create at least ten full time positions for qualifying

[1] At the time Plaintiff submitted the petition at issue in this case, the required investment of "capital" was $500,000 if the qualifying investment was made in a "targeted employment area" and $1,000,000 otherwise. *See* 8 U.S.C. § 1153(b)(5)(C) (2016); 8 C.F.R. § 204.6(f) (2016).

U.S. workers. *See* 8 C.F.R. §§ 204.6(j)(1)-(6). At issue here is the regulatory requirement in 8 C.F.R. § 204.6(j)(3), that the foreign investor demonstrate that the capital being invested in the United States was "obtained through lawful means."

For purposes of an EB-5 investment, the regulations define "capital" as excluding any assets that the foreign investor acquired directly or indirectly by "unlawful means." 8 C.F.R. § 204.6(e). Specifically, any "[a]ssets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital for the purposes of section [1153(b)(5)]." *Id.* The INS defined "capital" this way to effectuate Congress's intent that "the funds utilized" "are not of suspect origin." *Spencer Enters. v. United States*, 229 F. Supp. 2d 1025, 1040 (E.D. Cal. 2001) *aff'd* 345 F.3d 683 (9th Cir. 2003); *see also* 8 C.F.R. § 204.6(g)(1) (indicating "[t]he establishment of a new commercial enterprise may be used as the basis of a petition for classification as an alien investor even though there are several owners of the enterprise, including persons who are not seeking classification under section [1153(b)(5)] and non-natural persons, both foreign and domestic, provided that the source(s) of all capital invested is identified and all invested capital has been derived by lawful means."). To show that the "capital" was "obtained through lawful means," the foreign investor must include with his or her I-526 petition, "as applicable": financial documents such as: (i) foreign business registration records; (ii) corporate, partnership and personal tax returns filed within five years of filing the petition; (iii) evidence identifying other sources of capital; or (iv) certified copies of judgments or evidence of all pending criminal, civil, or administrative actions involving monetary judgments against the investor within fifteen years of filing the petition. *See* 8 C.F.R. §§ 204.6(j)(3)(i)–(iv).

On March 15, 2022, the President signed the EB-5 Reform and Integrity Act of 2022 ("RIA"), which made significant amendments to the EB-5 program, including the designation of

TEAs and the minimum investment amounts. *See* 8 U.S.C. § 1153(b)(5) (2022). Most relevant to this action, Congress, aware of the agency's practice of looking into third-party source of funds, codified the existing regulatory language used to prove the lawfulness of invested such funds in 8 C.F.R. § 204.6(j)(3) into the statute 8 U.S.C. § 1153(b)(5)(L), and, crucially, added language that requires petitioners' invested capital to be "obtained from *a lawful source* and through lawful means." 8 U.S.C. § 1153(b)(5)(L)(i) (emphasis added).

Under 8 C.F.R. § 103.3(c), USCIS has designated four agency "precedent[ial] decisions," to provide alien investors with additional guidance on the rules and requirements of the EB-5 program: *Matter of Ho*, 22 I. & N. Dec. 206 (Assoc. Comm'r 1998), *Matter of Hsiung*, 22 I. & N. Dec. 201 (Assoc. Comm'r 1998), *Matter of Izummi*, 22 I. & N. Dec. 169 (Assoc. Comm'r 1998), and *Matter of Soffici*, 22 I. & N. Dec. 158 (Assoc. Comm'r 1998). *See R.L. Inv. Ltd. Partners v. INS*, 86 F. Supp. 2d 1014, 1018 (D. Hawaii 2000), *aff'd*, 273 F.3d 874 (9th Cir. 2001).

For 25 years, these decisions have made clear that EB-5 petitioners seeking to establish the lawful source of their funds must identify "where these funds originated" by "document[ing] the path of the funds" in order to qualify for an EB-5 visa. *Matter of Izummi*, 22 I & N Dec. at 195; *Matter of Ho*, 22 I & N Dec. at 211, 214 ("[T]he wire-transfer receipt does not reveal from what bank account(s) the funds originated[,]" and the petitioner's "fail[ure] to clarify the source of his funds" will result in "ineligib[ility] for classification as an alien entrepreneur[.]"); *Matter of Soffici*, 22 I & N Dec. at 165 ("Simply going on record" and asserting that the funds come from a lawful source "without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings."). Without corroborating documentary evidence of the path of funds, a petitioner cannot meet the burden of showing that it is "more likely than not" that the source of the funds derived from a "lawful source." *Sadeghzadeh v. USCIS*, 322 F. Supp. 3d 12,

17–18 (D.D.C. 2018) ("The AAO's decision correctly states that, under governing regulations and precedent, an applicant must document the complete path of her investment funds…. The AAO was well within its discretion to demand evidence to fill that evidentiary gap"). In requiring that funds be directly or indirectly derived from a lawful source, "the regulatory focus is on the unlawful nature of the source of the funds, not the intentions, culpability, or mens rea of the investor." *Kara v. USCIS*, No. 20-cv-20611, 2020 WL 7711661, at *2 (S.D. Fla. Dec. 29, 2020), *aff'd Kara v. United States*, No. 2021-10182, 2021 WL 3286283 (11th Cir. Aug. 2, 2021) (internal quotations omitted) ("None of the documents Kara provides individually or collectively trace her investment funds to a lawful source, irrespective of her knowledge of their source.").

**B. Factual and Procedural Background**

***Plaintiff's Form I-526.*** Plaintiff filed his Form I-526 on December 5, 2016. Certified Administrative Record ("CAR") at 5–7. In the petition, Plaintiff represented that he invested $500,000 into Wade Park Finance Company A1, LLC, a NCE and job-creating entity ("JCE"), in order to create an urban style development in suburban Frisco, Texas. CAR at 9–10. Specifically, Plaintiff represented that he was principally doing business within a TEA and that the NCE would include shopping space, office space, entertainment, hotels, and housing on a 175-acre plot of land. CAR at 9–10.

Accompanying the petition was Plaintiff's "Memorandum re I-526 Petition," *see* CAR at 9–15, and its supporting Exhibits 1–16, *see* CAR at 17–736. Therein, Plaintiff asserted that the lawful source of his EB-5 investment funds came through a "personal loan" derived from "using a property he owns as collateral." CAR at 14. According to Plaintiff, that "property was purchased … using his years of accumulated employment income." *Id.* Plaintiff represented to USCIS that he purchased the property on April 15, 2006, and he "paid the entire purchase amount in one lump

sum" and "has been the sole owner of the Property since then." *Id.* Plaintiff paid ¥377,000 for the property. *Id.*; CAR at 491, 494. With respect to his income source, Plaintiff points to his employment at Beijing Fukang Tiandi Technology Development Co., LTD (formerly known as Beijing Fukang Tongda Network Technology Development Center), where he has worked since October 2004. *Id.*; *see also* CAR at 481, 486. Prior to purchasing his home, Plaintiff asserts that "from October 2004 to March 2006[,] [Plaintiff] made approximately ¥595,500 after-tax employment income" which "was more than enough to enable him to purchase a property for ¥377,000 in April 2006 and to cover his living expenses during these years." *Id.* Plaintiff alleges that on September 6, 2016, his "[p]roperty was appraised and assigned a value of ¥5,655,883. CAR at 14, 522. Plaintiff "mortgaged the [p]roperty as security for the loan" and received a "personal loan of ¥3,750,000 from Shanghai Pudong Development Bank ("SPD")[.]" *Id.*

On September 26, 2016, "the loan proceeds were deposited into [Plaintiff's] account at SPD Bank." *Id.* Thereafter, Plaintiff made several different transfer transactions from September 27, 2016 to September 29, 2016. CAR at 15. On September 27, 2016, Plaintiff "transferred a total of ¥3,358,640 in five separate transactions from his account at SPD … to Yanfeng Zhao's account at China Merchant's Bank[.]" CAR at 15. Yanfeng Zhao then transferred money into Plaintiff's bank account from a separate bank account—China Merchant Bank (Hong Kong)—and "transferred a total of USD$500,000 in four separate transactions … to [Plaintiff's] account at China Merchant's Bank Hong Kong." CAR at 15. On September 27, 2016, Plaintiff also "transferred ¥314,200 from his account at SPD Bank … to Wenyi Han's account at China Merchant's Bank" and "Wenyi Han exchanged the money he had received into []$47,000 and transferred to [Plaintiff's] account at China Merchants Bank Hong Kong[.]" CAR at 15. Of note, Wenyi Han did not use a separate bank account to transfer U.S. dollars into Plaintiff's China

Merchants Bank Hong Kong account. CAR at 15. And on September 29, 2016, Plaintiff "transferred ¥77,162 from his account at SPD Bank … to his account at China Merchants Bank" and "exchanged []$3,000 and transferred to his account at China Merchants Bank Hong Kong[.]" CAR at 15. In total, Plaintiff received a total of $550,020 in three separate transactions. CAR at 15. On November 3, 2016, NYSA Capital notified Plaintiff that it received $549,942.00 for the NCE Wade Park Finance Company A1, LLC investment. CAR at 15, 733.

***The Request for Evidence.*** On January 18, 2024, USCIS issued a Request for Evidence ("RFE"), notifying Plaintiff that he had not established his eligibility for the immigrant investor visa. *See* CAR at 737–746. USCIS thus requested that Plaintiff submit documentary evidence demonstrating the following: (1) the capital used to invest in Wade Park Finance Company A1, LLC was obtained through lawful means; (2) the path of funds of the U.S. dollars are traced to a lawful source; (3) foreign business registration records of businesses or individuals who directly and indirectly contributed towards the source of funds to invest; (4) tax returns; and (5) civil or criminal proceedings entered against Plaintiff and/or third-party exchanger. CAR at 739–745.

*a. Capital Obtained Through Lawful Means*

Plaintiff used his property as collateral to obtain a mortgage loan from SPD Bank. CAR at 740. Plaintiff, however, failed to demonstrate that the money he used to purchase this property derived from the income he acquired from 2004 to 2006. CAR at 740. For this reason, USCIS requested that Plaintiff submit corroborating evidence, such as "complete banking statements, labor contract, bonus letter, transfer documentation, or other sufficient evidence demonstrating that sufficient earnings were accumulated … from lawful sources [and] were actually used to purchase property." CAR at 740–741. Relatedly, USCIS noted that per the SPD Bank loan contract, the loan period was set for "five years with a 4.75% interest rate, and repayment was due by September 26,

2021." CAR at 741. USCIS requested that Plaintiff provide proof that the loan was paid in full. CAR at 741.

*b. Path of Funds*

Plaintiff also exchanged his RMB funds to U.S. dollars using an unlicensed exchanger. Because Plaintiff has the burden of demonstrating that the funds transferred to his bank account were obtained through lawful means, USCIS requested that Plaintiff "show … at least three (3) months of complete bank statements preceding the currency exchange/swap and evidence (such as cash deposits, transfer/wire documents) identifying the sources of the funds in Exchanger's bank account." *Id.* (citing *Matter of Ho*, 22 I&N Dec. at 210–11; *Matter of Izummi*, 22 I&N Dec. at 195).

USCIS requested that Plaintiff submit a "complete diagram and a detailed chart explaining the complete path of [Plaintiff's] funds from the September 2016 sale of Property to [Plaintiff's] bank accounts, to all individuals that exchanged and transferred funds … Source of funds documentation should include, foreign business registration records, evidence that all applicable personal and corporate taxes were paid, evidence identifying any other sources of capital, and/or other sufficient evidence." CAR at 742. USCIS explained that in order to demonstrate that the funds can be traced to a lawful source, Plaintiff must submit "complete bank account statements from all referenced bank accounts for the duration of time when [Plaintiff's] investment funds were in each of those accounts[,]" as well as "transfer documentation (such as wire documents) for each transfer through each bank account and finally to the NCE." CAR at 742. USCIS lastly requested that Plaintiff submit evidence "reflecting the exchange of RMB to U.S. Dollars." *Id.*

*c. Foreign Business Registration Records*

USCIS reminded Plaintiff pursuant to 8 C.F.R. § 204.5(j)(3)(i) an applicant must submit foreign business registration records to fulfill the requirement of demonstrating that funds were obtained through lawful means. *Id.* USCIS requested that Plaintiff submit such evidence in connection to the following businesses: (1) Beijing Fukang Tiandi Technology Development Co. Ltd (formerly Beijing Fukang Tongda Network Technology Development Center); (2) Beijing FengKang Network Technology Development Center; (3) Beijing Wangxun Electronic Technology Co. Ltd,; (4) Employers of Exchanger; (5) any additional employers of [Plaintiff] and/or Exchanger (past or present) directly or indirectly relevant to the source of funds; (6) any entities that [Plaintiff] and/or Exchanger own (whether partially or wholly) directly or indirectly relevant to the source of funds; and (7) any and all other sources of funds for the purchase of Property in April 2006. CAR at 742–743. USCIS also requested that Plaintiff submit evidence, if any, that "employers or entities that [Plaintiff] has ownership interest in has or had business working or contracts with a military or government entity." CAR at 743.

*d. Tax Returns*

USCIS also noted that pursuant to 8 C.F.R. § 204.6(j)(3)(iii), Plaintiff's Form I-526 must be accompanied "by … [c]orporate, partnership … and personal tax returns including income, franchise, property (whether real, personal, or intangible), or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the Petitioner." *Id.* Because Plaintiff had not complied with this requirement, USCIS requested that he submit proof of tax payments and personal income taxes on behalf of the third-party exchanger and himself. CAR at 743. Relatedly, USCIS requested that Plaintiff submit evidence demonstrating whether taxes were paid on the third-party exchanger's U.S. dollars if applicable. *Id.*

*e. Civil or Criminal Proceedings*

Pursuant to 8 C.F.R. § 204.6(j)(3)(iv), USCIS reminded Plaintiff that the Form I-526 must be accompanied by "[c]ertified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years." CAR at 744. USCIS requested that Plaintiff comply with this requirement and to submit such evidence on behalf of the third-party exchanger. USCIS noted that if there are no actions, proceedings, or judgments against Plaintiff or the third-party exchanger as described in 8 C.F.R. § 204.6(j)(3), Plaintiff is to "clearly state that in the RFE response." CAR at 744.

USCIS concluded its RFE by noting that at present, the evidence Plaintiff submitted failed to establish that he was eligible for the investor immigrant visa. CAR at 746. USCIS noted that Plaintiff can submit additional evidence that has not been requested to meet his burden to prove by a preponderance of the evidence that he is eligible for the visa. CAR at 746.

***Plaintiff's RFE Response.*** Plaintiff submitted his response to the RFE on April 26, 2024. CAR at 747–749. Plaintiff included Exhibits 1–6. CAR at 752–831.

In response to USCIS's request for additional evidence demonstrating that the funds he accumulated through his employment were the actual source of funds used to purchase his property, Plaintiff—through his attorney—conclusively stated that "[t]he funds used to purchase the property located in April 2006 were [Plaintiff's] accumulated employment income from 2004 to 2006. Due to the passage of time, bank statements are not available as banks are generally only required to keep records for up to seven years." CAR at 748. Instead of submitting evidence that USCIS requested—or evidence showing that his bank only retains statements for seven years—Plaintiff again submitted the "Income Certificate from Beijing Fukang Tiandi Technology

Department Co. Ltd." CAR at 754; *see also* CAR at 486. Plaintiff also included a signed statement wherein he states, amongst other things, that "[f]rom the early 2000s, [he] and [his] wife worked day and night to accumulate the asset and the fund." CAR at 758.

In response to USCIS's request for evidence demonstrating that the third-party exchanger can trace the path of the funds, specifically the U.S. dollars, to a lawful source, Plaintiff submitted Yanfeng Zhao's written statement. CAR at 762. Yanfeng Zhao alleges that he has been "mainly engaged in e-commerce, finance, and foreign trade work since graduation[,] [t]herefore, [he] ha[s] US dollar income." CAR at 762. Yanfeng Zhao further declared that the "exchange of USD 500,000.00 paid to Li Jianhua was [his] lawful income." CAR at 762. As proof of Yanfeng Zhao's income in U.S. dollars, Plaintiff submitted a "Certificate of Employment" drafted by Shenzhen Jinxunfeng Network Technology Co., LTD. CAR at 766.

Plaintiff also submitted the same evidence he previously filed with his petition, such as a "List of Historical Breakdown of Designated Current Account under Personal Voucher for Query and Print" which is printed on November 21, 2016, and lists Plaintiff's incoming and outgoing transactions from September 22, 2016 to September 29, 2016. CAR at 770; *see also* CAR at 681. He also filed several SPD Bank "Receipt of Individual Inter-Bank Outward Remittance" with a remittance date of September 27, 2016 to September 29, 2026. CAR at 776, 778, 780, 782, 784. On September 28, 2016, Plaintiff sent Yanfeng Zhao ¥671,000. CAR at 780. On September 29, 2016, Plaintiff sent Yanfeng Zhao two different transactions of ¥228,140.00 and ¥443,000.00. CAR at 782, 784. Plaintiff also submitted a "Query" print out that restates the transaction exchange that took place from September 27 to September 29, 2016. CAR at 786, *see also* CAR at 788. Plaintiff also submitted Yanfeng Zhao's "Personal Banking Transaction History of Hong Kong Branch of China Merchant Bank" where it provides an overview of the money that entered Yanfeng

Zhao's bank account from September 27 to September 29, 2016. CAR at 790. Plaintiff also included a copy of a China Merchants Bank card, but there is no name included with the card. CAR at 792. Plaintiff also submitted evidence of the transactions that took place between his bank account and Han Wenyi's bank account. CAR at 798.

Plaintiff submitted evidence demonstrating that he transferred ¥77,162,00 from the Shanghai Pudong Development Bank to the Beijing Branch of China Merchant's Bank. CAR at 809. In addition to submitting several bank statements without identifying information, Plaintiff submitted his bank statement from China Merchants Bank which includes the U.S. dollars he received from September 27, 2016 to September 29, 2016. CAR at 816. Lastly, Plaintiff submitted a document titled "Formal Notice of Receipt of Funds" which notifies Plaintiff that NYSA Capital received $549,942.00. CAR at 822.

In response to USCIS's request for evidence related to whether Plaintiff or Yanfeng Zhao had a history of civil or criminal proceedings, Plaintiff submitted a "Notarial Certificate" noting that he had no criminal record "during his residence in the People's Republic of China up to April 1, 2024." CAR at 829. No evidence was submitted related to Yanfeng Zhao's history of civil or criminal proceedings.

Lastly, no evidence was submitted with respect to Plaintiff's personal income tax returns.

***USCIS's Denial of Form I-526.*** On September 18, 2024, USCIS issued a decision denying Plaintiff's I-526 petition. CAR at 832–840. USCIS, in its decision, explained that it reviewed the evidence submitted and concluded that Plaintiff had not established his eligibility for an EB-5 visa as he failed to demonstrate that the funds used in the investment were derived from a lawful source. CAR at 835. Specifically, USCIS noted that because Plaintiff used a third-party exchanger, he had to demonstrate by a preponderance of evidence that the funds exchanged and then transferred to

the NCE derived from a lawful source. CAR at 837. Plaintiff, however, failed to submit evidence such as "banking statements from [the third-party] Exchanger's China Merchants Bank account[.]" CAR at 837. Instead, Plaintiff submitted the third-party exchanger's written statement, CAR at 762, his certificate of employment, CAR at 766, Plaintiff's "List of Historical Breakdown of Designated Current Account under Personal Voucher for Query and Print[,]" CAR at 770, Yanfeng Zhao's Resident Identification Card, CAR at 773, and Bank Statements demonstrating that Plaintiff sent money to Yanfeng Zhao from September 27, 2016 to September 29, 2016. CAR at 776–784. USCIS reviewed this evidence but determined that Plaintiff was unable to demonstrate that the money from the Exchanger was obtained through lawful means. CAR at 836.

USCIS also determined that Plaintiff had failed to demonstrate that the income from his employment "w[as] accumulated and saved and then w[as] the actual source of funds used to purchase" his property in April 2006. CAR at 838. Lastly, USCIS noted that Plaintiff failed to meet the requirements set forth in the regulation, including his obligation to attach evidence of his personal income taxes. CAR at 838. In sum, USCIS concluded that Plaintiff failed to demonstrate that the funds used in his investment derived from a lawful source.

***District Court Litigation.*** Plaintiff initiated the instant action on January 1, 2025. ECF No. 1. Defendants filed an answer on May 16, 2025. ECF No. 9. The parties submitted a joint meet and confer report on June 2, 2025. ECF No. 10. On June 30, 2025, Defendants served a copy of the CAR on Plaintiff. On July 30, 2025, Plaintiff filed his Motion for Summary Judgment. ECF No. 12. Defendants hereby oppose Plaintiff's Motion for Summary Judgment and cross move for summary judgment.

## STANDARDS OF REVIEW

### A. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). "Accordingly, the standard set forth in Rule 56 does not apply because of the limited rule of a court in reviewing the administrative record … Summary judgment is the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *CS-360, LLC v. U.S. Dep't of Veterans Affairs*, 101 F. Supp. 3d 29, 32 (D.D.C. 2015) (citations and internal quotations omitted); *see Fla. Pwr & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

### B. Review Under the APA

Under the APA, the Court may review a challenge to final agency action by an aggrieved party, *see* 5 U.S.C. § 702, 704, but the Court can set aside a final agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Judicial review of agency action is confined to the administrative record before the agency at the time the decision was made. *Cherokee Nation v. U.S. Dep't of the Interior*, 531 F. Supp. 3d 87, 94 (D.D.C. 2021). Agency action may be reversed under the arbitrary and capricious standard only if the agency has relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n*

*v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). If this Court can discern a "rational basis" for the agency's "treatment of the evidence," that is sufficient—as the "arbitrary and capricious test does not require more." *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 290 (1974).

Importantly, "the arbitrary and capricious review standard is a '[h]ighly deferential' one that 'presumes the validity of agency action.'" *Glob. Tropical Imports & Exports LLC v. Bernhardt*, 366 F. Supp. 3d 110, 114 (D.D.C. 2019), *aff'd*, 798 F. App'x 659 (D.C. Cir. 2020) (quoting *Hagelin v. Fed. Election Comm'n*, 411 F.3d 237, 242 (D.C. Cir. 2005)). Even if the Court disagrees with the agency's decision, a reviewing court is not empowered to substitute its judgment for that of the agency. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Additionally, "the party challenging an agency's action as arbitrary and capricious bears the burden of proof." *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986).

The APA applies the substantial evidence standard to factual review in formal proceedings, including adjudication under 5 U.S.C. § 706(2)(E). *See Phoenix Herpetological Soc'y, Inc. v. U.S. Fish & Wildlife Serv.*, 998 F.3d 999, 1005 (D.C. Cir. 2021). "To be sure, the arbitrary and capricious standard does not substantively differ from the substantial evidence test when 'performing [the] function of assuring factual support.'" *Id.* (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. Of Governors of Fed. Rsrv. Sys.,* 745 F.2d 677, 683 (D.C. Cir. 1984)). "The D.C. Circuit has explained that '[s]ubstantial-evidence review is highly deferential to the agency fact-finder.'" *Borushevskyi v. USCIS*, 664 F. Supp. 3d 117, 131 (D.D.C. 2023) (quoting *Sec'y of Lab. V. Knight Hawk Coal, LLC,* 991 F.3d 1297, 1308 (D.C. Cir. 2021)). The Supreme Court has explained that substantial evidence "is something less than the weight of the evidence, and the possibility of

drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). A court applying the substantial evidence standard may not "displace … [a] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Alegent Health-Immanual Med. Ctr. v. Sebelius*, 34 F. Supp. 3d 160, 168 (D.D.C. 2014) (internal citation omitted).[2]

**ARGUMENT**

**I. The agency's decision is supported by substantial evidence in the record.**

USCIS denied Plaintiff's I-526 petition because he failed to "demonstrate[] by a preponderance of the evidence that the investment capital derives from lawful means." CAR at 839. There is ample evidence within the administrative record that Plaintiff failed to establish that his EB-5 investment derived from a lawful source of funds and from lawful means. *See generally* CAR at 832–840 (USCIS Denial Decision); *id at* 737–746 (RFE). Courts will not disturb an agency's fact- finding determination if supported by substantial evidence in the record. *Kornman v. S.E.C.*, 592 F.3d 173, 184 (D.C. Cir. 2010). Under the substantial evidence standard, the Court "looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Borushevskyi v. USCIS*, 664 F. Supp. 3d at 131 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). The substantial evidence bar "is not

[2] Plaintiff discusses at length "the principles of deference[,]" how "[t]he only issues that should be reviewed are those in the 'Four Corners' of the Denial[,]' and how "USCIS should be bound to the reasons it has stated for denying the Petition, and it is only that which the Court should review." Pl. Mot. at 13–15. Of note, the Court is to "look[] at an existing administrative record and ask[] whether it contains sufficient evidence to support the agency's factual determination." *Borushevskyi v. USCIS*, 664 F. Supp. 3d at 131. Therefore, the Court is not limited to the "Four Corners of the Denial" and is supposed to look whether the evidence supports the denial. Here, the Court will find that USCIS's decision is supported by substantial evidence, and therefore, it is unnecessary to consider potential post-hoc rationalizations prematurely.

high[,]" and requires "more than a mere scintilla[,]" *Biestek*, 587 U.S. at 103, "but can be satisfied by something less than a preponderance of the evidence," *Saunders v. Kijakazi*, 6 F.4th 1, 4 (D.C. Cir. 2021) (internal citations omitted). Here, USCIS's decision is clearly supported by substantial evidence.

### A. Plaintiff failed to establish that the funds he acquired to purchase his home, which was used to obtain a loan for purposes of the EB-5 investment, were lawfully obtained.

A foreign investor seeking an EB-5 visa must be able to "trac[e] the complete path of his capital investment." *Borushevskyi v. USCIS*, No. 23-5116, 2024 WL 2762146, at *1 (D.C. Cir. May 30, 2024). "In establishing the program, Congress intended that the 'processing of an individual visa not continue under this section if it becomes known to the Government that the money invested was obtained by the alien through other than legal means[.]'" *Borushevskyi*, 664 F. Supp. 3d at 127 (quoting S. Rep. No. 101-55, at 21). It is for this reason that an applicant who seeks to prove that "capital" was obtained through lawful means must meet the evidentiary requirements set forth in 8 C.F.R. §§ 204.6(j)(3)(i-iv). *Id.* An investor cannot merely state in conclusive terms that he has acquired funds through lawful means; he must provide evidence demonstrating that the source of income was lawfully obtained regardless of whether said income is direct or indirect.[3] Otherwise, the investor has failed to demonstrate by a preponderance of the evidence that the capital invested was obtained through lawful means. Here, Plaintiff has unequivocally failed to trace the complete path of his investment, and for this reason USCIS properly denied his petition.

[3] In promulgating the regulatory language on source of funds, the agency specifically focused on both "direct" and "indirect" means of obtaining funds: "The definition has also been changed to exclude assets *'directly or indirectly'* acquired by unlawful means. These words were added to effectuate Congress's intent that the visa process be discontinued 'if it becomes known to the Government that the money invested was obtained by the alien through other than legal means (such as money obtained through the sale of illegal drugs).' S. Rep. No. 101-55,101st Cong., 1st Sess. 21 (1989). (emphasis added)." 56 Fed. Reg. 60897, 60904 (Nov. 29, 1991).

Plaintiff belabors the argument that money that is exchanged through a third-party individual is fungible, Pl. Mot. at 19–22, and that even banks could be involved in money laundering, *id.* at 24–25.[4] Plaintiff, however, does not deny that the evidence *he* submitted failed to demonstrate that the funds he used for his EB-5 investment derived from a lawful source. Instead, he admits to his failure of submitting the necessary evidence and excuses this failure by positing "what reasonable person would have access to such documents?" Pl. Mot. at 25. When Plaintiff filed his EB-5 petition, he conclusively stated that "from October 2004 to March 2006" he "made approximately ¥ 595,500 after-tax employment income." CAR at 14. And that this income "was more than enough to enable him to purchase a property for ¥ 377,000 in April 2006 and to cover his living expenses during these years." CAR at 14. The only evidence he submitted in support of this claim is an "Income Certificate," *see* CAR at 486, which fails to demonstrate the accumulation of funds that Plaintiff saved prior to purchasing his property "in one lump sum on or before April 15, 2006." CAR at 14. While this evidence confirms that Plaintiff was employed at Beijing Fukang Tiandi Technology Development Company, from 2004 to 2006, this evidence does not show that those funds alone financed the purchase of his property. In other words, this evidence alone is insufficient to demonstrate that "sufficient earnings were accumulated and saved through

[4] It is worth noting that if an applicant who acquires ill-gotten funds from a third-party, regardless of whether such funds were acquired directly or indirectly, such receipt of such funds is still a crime under 18 U.S.C. § 2315. *See e.g.*, *Kara*, 2020 WL 7711661, at *4–5 ("As USCIS notes, in mandating that funds cannot be directly or indirectly obtained through unlawful means, 'the regulatory focus is on the unlawful nature of the source of the funds, not the intentions, culpability, or *mens rea* of the investor.' … USCIS's decision to deny Kara's petition was based on her failure to make an adequate record of legitimate funds."). Therefore, Plaintiff's argument that intent is required falls short. *See* Pl. Mot. at 24. In fact, the very reason why USCIS requires a petitioner to submit evidence demonstrating that their path of funds is lawful is to avoid such funds having ties to criminal activity. Finding otherwise would render the regulatory language—"directly or *indirectly*"—meaningless. *See* 8 C.F.R. 204.6(e); *see also Zhang v. USCIS*, 344 F. Supp. 3d 32, 41 (D.D.C. 2018) ("To qualify as 'capital,' the invested asset must have been lawfully-obtained: 'assets acquired, directly or indirectly, by unlawful means … shall not be considered capital.'").

lawful means, and those funds accumulated from lawful sources were actually used to purchase Property in April 2006, which was used as collateral in September 2016 in order to obtain a mortgage loan to finance his EB-5 investment." CAR at 740–41. Plaintiff cannot establish eligibility "merely by showing [he was] financially capable of affording … capital investment via lawfully obtained funds; [he] must establish that the actual capital invested was obtained through lawful means." *Lei v. USCIS*, No. CV 15-9654 FMO (PJWx), 2017 WL 5957641, at *4 n.2 (C.D. Cal. Mar. 23, 2017), *aff'd*, 740 F. App'x 578 (9th Cir. 2018). Yet, when provided an opportunity to provide additional evidence, Plaintiff, through counsel, conclusively stated—without corroborating evidence—that "bank statements are not available as banks are generally only required to keep records for up to seven years" and therefore "the income certificate from Beijing Fukang Tongda Network Technology Development serves as the secondary evidence demonstrating that sufficient earnings were accumulated and saved from lawful means." CAR at 748. Yet, Plaintiff failed to provide a letter from the bank explaining that it had a policy of keeping record for seven years or evidence demonstrating that his spouse contributed towards the investment Plaintiff made in support of his EB-5 petition. Even if Plaintiff was "unable to provide any documentation supporting this position because the relevant bank records no longer exist, the non-existence of those bank records does not, as USCIS points out, relieve Plaintiff of his duty to provide objective supporting evidence." *Zhang v. Nielsen*, No. CV 18-9799-JFW(JPRX), 2019 WL 5303276, at *7 (C.D. Cal. Oct. 17, 2019)

Plaintiff himself does not even explain whether he attempted to connect with banks to obtain "banking statements, labor contract, bonus letter, transfer documentation, or other sufficient evidence, demonstrating that sufficient earnings were accumulated and saved from lawful means[.]" CAR at 740. Plaintiff merely asserts that he saved this money and does nothing more to

substantiate his claims. Plaintiff only states that "[f]rom early 2000s, [he] and [his] wife worked day and night to accumulate the asset and the fund." CAR at 758. "Simply going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings." *In re Soffici*, 22 I&N Dec. at 165; *see also Sadeghzadeh*, 322 F. Supp. 3d at 17–18 (concluding that it was not arbitrary or capricious for USCIS to deny the plaintiff's I-526 petition for failing to document the complete path of her investment funds); *see also Zhang*, 2019 WL 5303276, at *7–8 (granting summary judgment in favor of the government where the plaintiff was unable to show documentation of earnings from 1985 to 2003, which were the claimed source of gifted funds, explaining that "EB-5 investors cannot satisfy the requirements of 8 C.F.R. § 204.6(j)(3) without sufficiently documenting the source and path of their investment funds[.]"). In order to demonstrate his eligibility for the EB-5 visa, Plaintiff was required to "'submit sufficient evidence to prove the complete path of [his] EB-5 investment funds,' which, '[u]nder USCIS precedent, … requires objective documentation tracing the transfer of funds.'" *Truong v. USCIS*, No. 21-316 (RC), 2023 WL 4234658, at *6 (D.D.C. June 28, 2024). The mere fact that Plaintiff was employed when he purchased his property does not establish that the actual funds used derived from a lawful source especially when there is no evidence to prove otherwise.

Even assuming Plaintiff could demonstrate that he lawfully earned and accumulated funds to obtain his property, Plaintiff still failed to demonstrate that the loan he obtained from his mortgage to invest the capital into an EB-5 investment "was paid in full[.]" CAR at 839. Instead, Plaintiff provides a mere statement alleging that he obtained an equity line from SPDB, then sold his property, and that is how he "paid back the loan to SPDB." CAR at 758. Plaintiff's statements, however, are not evidence of his loan being paid off. When addressing why he has failed to provide corroborating evidence, Plaintiff simply stated that he has been "facing a great challenge to locate

[his] paid off documents." CAR at 758. Plaintiff's attorney alleges that he attempted to "retrieve the documents from SPD Bank" but "due to the passage of time and short notice the bank was not able to locate the records." CAR at 749. As USCIS noted, Plaintiff ultimately failed to submit documentation from the bank to corroborate this claim. CAR at 839. Therefore, Plaintiff failed to demonstrate that he has invested "capital" that has been obtained through lawful means as "[t]he amounts referenced by the [Plaintiff] either do not constitute qualifying 'capital,' because they are not his, or have not been properly 'invested,' because they are debt arrangements between the [Plaintiff] and his [bank] … [and] are secured by assets of the business." *See In re Soffici*, 22 I&N Dec. at 165. At no point has Plaintiff substantiated his claims with independent documentation to show why he was unable to provide proof of paying his bank loan. Instead, Plaintiff only submitted the same evidence in response to the RFE to explain away his source of income.

Because Plaintiff did not submit any objective evidence to USCIS regarding whether his funds were obtained lawfully, Plaintiff failed to meet his burden. *See* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa[,] the burden of proof shall be upon such person to establish that he is eligible to receive such visa[.]"); *see also Sagarwala v. Cissna*, 387 F. Supp. 3d 56, 69 (D.D.C. 2019) ("[I]t was not arbitrary, capricious, or an abuse of discretion for USCIS to conclude that the company simply had not met its burden."). And because the evidence was lacking, USCIS had no choice but to rely on the evidence submitted. *Borushevskyi*, 664 F. Supp. 3d at 138 (explaining that, where an agency's decision to deny an application is based "on the petitioner's failure to meet the necessary burden, *i.e.*, on a general lack of evidence rather than on a particular piece of evidence, there need not be affirmative contradictory evidence on the record—a rational, supported explanation of the lack of evidence suffices to meet the substantial evidence test."). And even though Plaintiff disagrees with how USCIS weighed the evidence, it is not the

Court's role to reweigh the evidence in an APA record review case, nor should the Court substitute its own judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

**B. The record contains insufficient documentation demonstrating that the third-party exchanger is a lawful source.**

The documentary evidence Plaintiff submitted to demonstrate that his funds were acquired from a lawful source were deficient. Due to the lack of evidence, USCIS could have very well presumed that the source of his funds derived from suspicious origins. For this reason, "USCIS has long indicated that a petitioner must not only establish that the funds invested are [his] own, but also document the path of [his] funds … And the agency's adjudications have since reflected this requirement." *Truong*, 2023 WL 4234658, at *5; *see also Lei*, 2017 WL 5957641, at *5 (finding USCIS's decision denying an EB-5 petition did not violate the APA where USCIS concluded that, among other reasons, the petitioner had not demonstrated the complete path of funds through a third-party). Plaintiff argues that "it is clear that Plaintiff's capital—that thing of value he has invested in the NCE—derives from his mortgaged property, and was not added to by unlawful means, and was not sourced or created in any way by the currency exchanger(s)." Pl. Mot. at 19. Despite Plaintiff's belief, it is *unclear* whether the loan that Plaintiff obtained was paid off and as a result, it is unclear whether the money invested into the United States even belongs to Plaintiff and not the bank. But even if Plaintiff lawfully obtained these funds, Plaintiff was unable to trace the funds he transferred to the third-party exchanger, Yanfeng Zhao, in exchange for the U.S. dollars he received and later invested into the NCE.

The path of funds requirement "require[s] the investor to establish the source of the funds—which can be demonstrated by documenting the complete path of the funds—to demonstrate that the funds were obtained through lawful means." *Borushevskyi*, 664 F. Supp. 3d at 129. The reason for this requirement is to '"service a valid government interest; i.e., to confirm that the funds

utilized in the program are not of suspect origin.'" *Id.* (quoting *Spenser Enters., Inc. v. United States*, 229 F. Supp. 2d 1025, 1040 (E.D. Cal. 2001)). When a third party is involved, "the agency has long considered its 'path of funds' requirement to include documenting how third parties involved in the movement of funds received those funds from the EB-5 petitioner." *Truong v. USCIS*, No. 21-316 (RC), 2022 WL 17356865, at *8 (D.D.C. Dec. 1, 2022). In fact, "USCIS has long indicated that a petitioner must not only establish that the funds invested are [his] own …, but also document the path of [his] funds, such as by providing wire transfer records[.]" *Truong*, 2023 WL 4234658, at *5 (citing *In re Soffici*, 22 I&N Dec. at 165 n.3 and *In re Izummi*, 22 I&N Dec. at 195). As noted in *Le v. USCIS*, "the question under the regulation is (a) whether the funds are the petitioner's 'own' (i.e., in the petitioner's possession or control), and (b) whether the 'instrument' used to 'bring into [the petitioner's] possession'—including both the 'direct' acquisition (i.e., from the 'immediate source' and 'free from extraneous influence') and the 'indirect' acquisition (i.e., through methods that 'deviated from a direct line or course') were legal." 21-cv-501, 2025 WL 1743942, at *9 (D.D.C. June 24, 2025). As previously discussed, Plaintiff has failed to establish that the funds are his own (*i.e.*, failure to show that he saved money from his income to buy property and failure to show that loan he received has been paid in full and as a result unclear whether the bank owns the money invested). Relevant here, however, is whether Plaintiff can demonstrate that *the U.S. dollars* he acquired were lawfully obtained.

In this matter, there are several bank accounts involved in exchanging Plaintiff's funds to U.S. dollars. To summarize, Plaintiff transferred funds from his SPD Bank Account to Yanfeng Zhao's China Merchant's Bank and to Wenyi Han's China Merchant's Bank Account. *See* CAR at 750. Plaintiff also transferred funds from his own SPD Bank Account to his own China Merchant's Bank Account and then to his China Merchant's Bank Hong Kong Account. CAR at 750. After

Plaintiff transferred ¥314,200 to Wenyi Han's bank account, she then exchanged the funds to U.S. dollars ($47,000) within the same bank account and returned it to Plaintiff's China Merchant's Bank Account. *See* CAR at 750; *see also* CAR at 15. Of note, USCIS did not further inquire into Wenyi Han's account and whether the U.S. dollars she exchanged derived from a lawful source.

However, the funds exchange that took place between Yanfeng Zhao and Plaintiff required more inquiry to assess whether the funds derived from a lawful source. When Yanfeng Zhao used *two* separate bank accounts to exchange funds with Plaintiff, there was a "clear break in the source, custody, and ownership of Plaintiff's funds[.]" *Nguyen v. USCIS*, 637 F. Supp. 3d 822, 835 (C.D. Cal. 2022). After Plaintiff transferred ¥3,358,640 to Yanfeng Zhao's China Merchant's Bank Account, Yanfeng Zhao used a separate bank account—China Merchant's Bank Hong Kong—to then transfer $500,000 to Plaintiff's China Merchant's Bank Hong Kong account. *See* CAR at 750. Because Yanfeng Zhao used a separate bank account, there is no evidence demonstrating that there was an actual exchange of funds, as Plaintiff's funds never left Yanfeng Zhao's China Merchant's Bank Account. And, as a result, it is unclear how Yanfeng Zhao had this amount of money in his Hong Kong account. Even the chart Plaintiff provided in response to the RFE clearly illustrates that there was a "clear break in the source, custody, and ownership" of the funds. *See* CAR at 750. It is for this reason that USCIS asked Plaintiff to submit additional information regarding Yanfeng Zhao's different bank accounts. CAR at 741. USCIS noted, "[s]ince RMB 3,358,640 of [Plaintiff's] funds never left China and 500,000 US dollars deriving from Exchanger were invested in the NCE, Petitioner must trace the path of Exchanger's funds from lawful sources to Exchanger's China Merchant's Bank (Hong Kong)[.]" *Id*. For this reason, USCIS requested additional evidence from Plaintiff with respect Yanfeng Zhao's bank accounts, including evidence demonstrating "the accumulation/retention of lawfully-obtained funds in Exchanger's China Merchant's Bank (Hong

Kong) … to include at least (3) months of complete bank statements preceding the currency exchange/swap and evidence (such as cash deposits, transfer/wire documents) identifying the sources of the funds in Exchanger's bank account." CAR at 741.

In response to the RFE, Plaintiff did not dispute that the funds never left China and instead conclusively stated that "[t]he U.S. dollars Mr. Yanfeng Zhao used to exchange RMB with Petitioner was from his lawfully obtained employment[.]" CAR at 750. Yanfeng Zhao provided a statement where he alleged that "[f]rom July 2013 to September 2016, [his] US dollar income was approximately USD 1,150,000." CAR at 762. In support of this statement, Yanfeng Zhao only provided a "Certificate of Employment" which lists his income for 2013 to 2016. CAR at 766. The evidence submitted in response to the RFE was essentially identical to the evidence Plaintiff previously submitted in support of his EB-5 petition. And while it appears that Plaintiff his own funds into Yanfeng Zhao's China Merchant's Bank account, there was a break in the path of funds, as there is no evidence that those same funds were then transferred to Yanfeng Zhao's Hong Kong account. As a result, USCIS was unable to "trace the investment funds to a lawful source" and required additional evidence demonstrating that "the transaction(s) reflect[] the exchange of RMB to U.S. Dollars." CAR at 742.

This matter is similar to *Nguyen*, where the plaintiff placed his funds into an escrow account with a company in Vietnam. *Nguyen*, 637 F. Supp. 3d at 834. Nguyen's funds, however, never left Vietnam, as the funds were later transferred to another company in Vietnam and "[t]he funds Nguyen attempted to use in the investment project were a separate set of funds provided by Rainbow, in United States Dollars, which originated outside Vietnam." *Id*. In analyzing whether USCIS's decision was arbitrary and capricious, the court determined that "it was reasonable for USCIS to require him to establish that the funds transferred from his currency swap partner,

Rainbow, came from a lawful source[.]" *Id.* at 835. The same logic applies here, as it is unclear whether Plaintiff's funds ever left China, as the U.S. dollars that were invested into the NCE derived from a separate bank account. And with the very little evidence Plaintiff provided, USCIS was unable to determine whether the money that existed within Yanfeng Zhao's Hong Kong Bank account were obtained through lawful means. *See Le*, 2025 WL 1743942, at *9 ("Indeed, in [Le's] submission to USCIS, she describes the currency swap as follows: '[VNT Trading] collected funds in Vietnam from [her] and provided her with funds (via its wire to [the NCE]) that i[t] had received in U.S. dollars from an unrelated transaction.' … The question that the agency rightly sought to answer, then, was whether she obtained them through lawful means. And Le did not provide enough evidence for USCIS to answer that question in the affirmative.").

As noted in *Battineni v. Mayorkas*, if USCIS's decision is "based on the fact that petitioner failed to show by a preponderance of the evidence that his immediate source of investment … was a lawful source – not that petitioner failed to show that [the immediate source of investment] had lawfully acquired the actual funds petitioner later used to invest in the EB-5 investment" then USCIS's decision is not arbitrary and capricious. 752 F. Supp. 3d 195, 212 (D.D.C. 2024). As an illustration, the *Battineni* court found that "USCIS did *not* act arbitrarily and capriciously in concluding that [the plaintiff] failed to establish that his relevant loan funds came from lawful sources" as the only evidence submitted was a letter from the individual who loaned the plaintiff money, a photograph of a check that was less than what was loaned, and a photograph of the individual's license. *Id.* at 217 (emphasis added). Ultimately, USCIS determined that plaintiff "failed to 'demonstrate that [loaner] accumulated and maintained his employment income' such that he had sufficient lawful funds to transfer to [plaintiff]." *Id.* at 218. This case is no different, as

Plaintiff only submitted conclusory statements from himself and Yanfeng Zhao and bank statements that provided very little detail as to the source of these funds.

In sum, Plaintiff failed to submit evidence demonstrating that the third-party exchanger was in fact able to provide Plaintiff with the funds as there is no evidence tracing the money, such as his bank statements for the past three months. As a result, it is unclear whether that income derives from a lawful source. To be clear, USCIS was attempting to assess whether the money actually existed within Yanfeng Zhao's Hong Kong bank account. And Plaintiff was unable to provide any evidence to substantiate this fact. USCIS therefore concluded that Plaintiff failed to demonstrate by a preponderance of the evidence that the money he invested derived from a lawful source. *See* CAR at 838 ("It is unclear from the evidence submitted whether funds from sources not documented in the record were *co-mingled* in Exchanger's China Merchants Bank (Hong Kong) … as no banking statements from this bank account (or other sufficient evidence) were submitted at the time of filing or in response to the RFE.").

Although Plaintiff alleges that USCIS's denial of his petition is based on "an unlawful internal policy of enhanced scrutiny and adjudication standards that does not apply to other similarly situated applicants[,]" Pl.'s Compl. ¶ 13, USCIS has "consistently considered its 'path of funds' requirement to include documenting how third parties involved in the movement of funds received those funds from the EB-5 petitioner." *Truong*, 2023 WL 4234658, at *7; *see also Truong*, 2022 WL 17356865, at *7 ("[E]ven if Plaintiff intended to allege that USCIS's inquiry into Mr. Nguyen's role and actions in the currency swap amounted to a change in agency policy or practice, such an argument would be undermined by USCIS's public decisions demonstrating the agency's longstanding requirement that EB-5 petitioners document thoroughly the parth of their funds through a third party involved in the transaction."). Plaintiff relies heavily on *Zhou v. Noem*, No.

19-2650 (TJK), 2025 WL 416152 (D.D.C. Feb. 6, 2025) for the premise that "there is nothing in the statute, regulations, USCIS Policy Manual or precedent decisions that requires EB-5 investors to exchange money only through licensed or commercial money exchangers." Pl. Mot. at 21. Of note, however, USCIS is not discounting or determining that the use of an unlicensed exchanger would render a petitioner unqualified for the EB-5 visa. It certainly did not make such a finding here. Even then the facts in *Zhou* are distinct, as the plaintiff in *Zhou* submitted documents to show that the funds exchanged were lawfully obtained. In support of her I-526 petition, Zhou's friends converted her funds into U.S. dollars. *Zhou*, 2025 WL 416152, at *2. As corroborating evidence, Zhou "submitted currency-exchange statements and documents tracing the path of funds for each exchange." *Id.* And Zhou also "made a 'good faith effort' to provide additional information to show that [her friend's] funds derived from lawful means[.]" *Id.* at *3. Plaintiff, however, conveniently fails to note that the *Zhou* court determined that in order "to qualify for an EB-5 visa, she had to show not only that her Yuan were 'lawfully obtained' but that her U.S. Dollars were too." *Id.* at *7. And because plaintiff submitted an "escrow agreement," the court found that this evidence "avoided what USCIS claims happened here—that the currency-exchange detour 'broke the path of funds,' … as the agreement tracks the flow of funds by detailing, among others, the timing and other conditions for their release." *Id.* at *9. The court further noted that this evidence "appears to negate the notion that the EB-5 investment funds came out of nowhere[.]" *Id.* In other words, *Zhou* also determined that it was reasonable for USCIS to require an EB-5 applicant to provide evidence demonstrating that a third-party exchanger lawfully obtained their funds.

Yet, here, Plaintiff's lack of evidence gives the impression that Yanfeng Zhao's U.S. dollars "came out of nowhere." *Id.* In fact, Plaintiff only submitted a statement from the third-party exchanger, an income certification, and the third-party exchanger's bank account records on the

date of the transfer of funds. CAR at 762, 766, 776–786. There is no escrow agreement or evidence that details an agreement between Plaintiff and the third-party exchanger to discuss the terms and agreements between the two to explain and outline the currency exchange transaction. And as previously noted, the third-party exchanger used a separate bank account to then transfer money into Plaintiff's bank account. And although Plaintiff suggests that USCIS can "look up in its various databases" whether Yanfeng Zhao has an immigration history, *see* Pl. Mot. at 25, Plaintiff forgets that *he* has the burden to prove by a preponderance of the evidence that he is eligible for the EB-5 visa, *Sun v. USCIS*, No. 21-1612 (CKK), 2025 WL 947463 at *2 (D.D.C. Mar. 28, 2025) ("A petitioner seeking an EB-5 visa bears the burden of proof to show her eligibility for the visa. The petitioner must carry this burden by a preponderance of the evidence."). Therefore, this case is distinct from *Zhou*, as Plaintiff here failed to submit evidence demonstrating that the third-party exchanger was a lawful source.

**C. Plaintiff failed to meet the regulatory requirements necessary for EB-5 eligibility.**

Plaintiff failed in many respects to provide proof that his funds were lawfully obtained. In addition to the above, USCIS also determined that Plaintiff failed to meet evidentiary requirements under 8 C.F.R. § 204.6(j) to demonstrate that the "capital" invested was obtained through lawful means. Pursuant to regulation, "[a]n EB-5 immigration petition to classify an alien under section 203(b)(5) of the Act *must* be properly filed in accordance with … initial evidence, and any other supporting documentation." 8 C.F.R. § 204.6(a) (emphasis added). Among the evidence required, "the petition *must* be accompanied" by "personal tax returns including income … within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner" to demonstrate that "capital [was] obtained through lawful means." 8 C.F.R. §§ 204.6(j)(3), (ii) (emphasis added). Here, Plaintiff undeniably failed to meet this requirement. USCIS, therefore,

found that Plaintiff failed to comply with the regulation and as a result was ineligible for the EB-5 classification. *See* CAR at 839.

USCIS provided Plaintiff with an opportunity to meet this requirement after it issued the RFE. *See* CAR at 743–44. USCIS was explicit in requesting this evidence as it highlighted several times that 8 C.F.R. § 204.6(j)(3) required that he file his petition with his personal income taxes. CAR at 743–44. Plaintiff's response to the RFE, however, was silent as to this requirement. *See generally* CAR at 747–831. Not even Plaintiff's attorney at the time addressed the reason why Plaintiff's personal income taxes were missing. *See* CAR at 747–751. Therefore, USCIS's decision to deny on this additional ground is supported by substantial evidence.

In his motion for summary judgment, Plaintiff refers to this regulatory requirement as "a laundry list of requests[.]" Pl. Mot. at 11. Instead of acknowledging the regulation that requires Plaintiff to submit personal income documentation filed within five years of filing the petition, *see* 8 C.F.R. § 204.6(j)(3)(ii), Plaintiff engages in hypotheticals and inapplicable scenarios as to where "7 years of tax records would not be *applicable*," Pl. Mot. at 28 (emphasis in original). Plaintiff, however, applied for an immigration benefit that *requires* personal income taxes to be filed, and therefore, is in fact applicable in the matter here and no hypothetical will waive such a requirement. *See In re Izummi*, 22 I&N Dec. at 200 ("The alien-entrepreneur classification is for a special kind of person, and it is not surprising that, notwithstanding the random number fixed by Congress, few people have both the financial means and the entrepreneurial spirit to apply … The measure of success or failure of the EB-5 program is not the number of petitions granted; rather, it is the extent to which proper compliance is achieved and genuine investments are made."). Plaintiff has been aware since 2016 that he was going to invest money in the United States and would thereafter apply for an EB-5 visa. And although Plaintiff alleges that it is unreasonable for USCIS to require

that he submit "tax and other documents that would have been older than 10 years even before the I-526 filing," the regulations require that Plaintiff's petition, *at the time of filing*, be "accompanied … by … personal tax returns including income … filed within five years[.]" 8 C.F.R. § 204.6(j)(3)(ii). But despite this requirement, Plaintiff failed to abide by 8 C.F.R. § 204.6(j)(3)(ii). Plaintiff, therefore, created this issue for himself by failing to produce the tax returns when required. In other words, the fact that there has been a passage of time from when Plaintiff filed his petition and when USCIS issued the RFE does not change the fact that Plaintiff was still required to include his tax returns in accompaniment of his Form I-526 when it was initially filed.

As discussed at length above, the record amply supports the agency's decision concluding that Plaintiff failed to meet his burden to demonstrate the lawfulness of the source of funds used to finance his EB-5 investment. *See Sadeghzadeh*, 322 F. Supp. 3d at 17. Plaintiff is clearly aware that in order to show eligibility for an EB-5 visa, "*the petition must be accompanied*, as applicable, by (i) Foreign business registration records; (ii) … personal tax returns … (iii) Evidence identifying any other source(s) of capital; or (iv) Certified copies of any judgment or evidence of all pending governmental civil or criminal actions …" Pl. Mot. at 18 (quoting 8 C.F.R. § 204.6(j)(3)). Yet, instead of acknowledging that he failed to meet these basic requirements, he presents arguments without support that these requirements are unreasonable and conclusively alleges without support that he is eligible for an EB-5 visa. However, Plaintiff has failed to substantiate his petition with the evidence required and therefore failed to meet his burden of showing that the capital invested was obtained through lawful means. Therefore, for these reasons, this Court should uphold USCIS's decision on this additional basis.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion in its entirety and grant summary judgment in favor of Defendants.

Respectfully submitted,

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

GLENN M. GIRDHARRY
Acting Deputy Director

ALESSANDRA FASO
Acting Assistant Director

By: */s/ Erika Arce-Romero*
ERIKA ARCE-ROMERO
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 307-4469
Fax: (202) 305-7000
e-Mail: erika.arce-romero2@usdoj.gov

*Attorneys for Defendants*

Dated: September 2, 2025