**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JIANHUA LI, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:     25-00002 (RC) |
| | : | |
| v. | : | Re Document Nos.:    12, 13 |
| | : | |
| U.S CITIZENSHIP AND | : | |
| IMMIGRATION SERVICES, *et al*., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANTS' CROSS-
MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Foreign nationals who invest sufficient capital in the United States may obtain lawful

permanent resident status through the EB-5 Immigrant Investor Program ("EB-5 Program"),

administered by the United States Citizenship and Immigration Services ("USCIS"). Foreign

investors seeking to obtain such status through the EB-5 Program must petition USCIS and

present evidence that they have invested, or are actively in the process of investing, lawfully

obtained capital in a new commercial enterprise ("NCE") that will create at least ten full-time

jobs in the United States. If USCIS approves the petition, the foreign investor becomes eligible

for an "EB-5" visa. Obtaining an EB-5 visa makes a foreign investor eligible for conditional

permanent resident status for two years. Thereafter, if certain conditions are met, the foreign

investor can petition for permanent resident status.

In December 2016, Plaintiff Jianhua Li ("Mr. Li"), a Chinese national, petitioned USCIS

for EB-5 visa eligibility through the EB-5 Program. Mr. Li had invested $500,000 into an

enterprise that sought to develop 175 acres of land in Frisco, Texas. About seven years later, in

January 2024, USCIS issued Mr. Li a Request for Evidence ("RFE"), seeking further clarification or additional evidence demonstrating his eligibility for the EB-5 Program. Mr. Li submitted evidence in response to USCIS's request. After reviewing all of Mr. Li's submitted evidence, however, USCIS denied the petition, asserting that Mr. Li did not demonstrate eligibility. Thereafter, Mr. Li filed suit against USCIS and its Director, the Director of the EB-5 Program, and the Secretary of the Department of Homeland Security (collectively, "Defendants"), challenging USCIS's denial of his petition. Mr. Li contends that USCIS's decision was arbitrary and capricious, in violation of the Administrative Procedure Act ("APA"). Before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, the Court denies Mr. Li's Motion for Summary Judgment and grants Defendant's Cross-Motion.

## II.  BACKGROUND

### A.  Legal Background

In 1990, Congress created the EB-5 Program, which makes EB-5 visas available to foreign nationals who have invested, or are actively investing, sufficient capital in an NCE that will create at least ten full-time jobs for U.S. workers. 8 U.S.C. § 1153(b)(5)(A); *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 334 (D.C. Cir. 2023). After making a qualifying investment, the foreign investor must petition for the EB-5 visa by filing Form I-526 with USCIS. *Da Costa*, 80 F.4th at 336 (citing 8 C.F.R. § 204.6). The petition "must be accompanied by evidence that the [foreign investor] has invested or is actively in the process of investing lawfully obtained capital in a new commercial enterprise in the United States which will create full-time positions for not fewer than 10 qualifying employees." 8 C.F.R. § 204.6(j). However, "[a]ssets acquired, directly or indirectly, by unlawful means . . . shall not be considered capital"

and therefore cannot give rise to a qualifying investment. *Battineni v. Mayorkas*, 752 F. Supp. 3d 195, 200 (D.D.C. 2024) (quoting 8 C.F.R. § 204.6(e)). To show that the invested "capital" was "obtained through lawful means," the governing regulations set forth the types of documents that, "as applicable," the foreign investor must submit with his petition. *Id.* (citing 8 C.F.R. §§ 204.6(j)(3)(i)– (iv)). "These documents include: (i) foreign business registration records; (ii) corporate, partnership, and personal tax returns filed within five years of filing the petition; (iii) evidence identifying other sources of capital; and (iv) certified copies of judgments and evidence of all pending criminal, civil, or administrative actions involving monetary judgments against the investor within fifteen years of filing the petition." *Id.* (citing 8 C.F.R. §§ 204.6(j)(3)(i)– (iv)). The investor must also trace and document the complete path of his investment funds. *Sadeghzadeh v. USCIS*, 322 F. Supp. 3d 12, 17–18 (D.D.C. 2018).

The burden of proof in an EB-5 visa adjudication lies with the foreign investor, who must show by a preponderance of the evidence that he meets all eligibility requirements. *Mo v. USCIS*, 719 F. Supp. 3d 21, 25 (D.D.C. 2024) (citing 8 U.S.C. § 1361; 8 C.F.R. § 103.2(b)(1); and *Matter of Chawathe*, 25 I. & N. Dec. 369, 375 (2010)). The preponderance standard requires the foreign investor to demonstrate that their claim is "probably true," based on the specific facts of their individual case. *Id.* (quoting *Chawathe*, 25 I. & N. Dec. at 376). In applying this standard, USCIS must "examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true." *Id.* (quoting *Chawathe*, 25 I. & N. Dec. at 376).

### B.  Factual Background

#### 1.  Mr. Li's EB-5 Program Petition (Form I-536)

Mr. Li is a Chinese foreign national. J.A. 1. In 2016, Mr. Li petitioned USCIS for EB-5 visa eligibility via the EB-5 Program by filing a Form I-536 with the agency. *Id.* at 1–3. According to his petition, Mr. Li invested $500,000 into Wade Park Finance Company A1, LLC, an NCE which sought to develop land in Frisco, Texas. *Id.* In his petition, Mr. Li asserted that the lawful source of his investment derived from the proceeds of a loan secured by a property he owned (the "Property"). *Id.* at 10. Mr. Li explained that he had purchased the Property for ¥377,000 using his savings accumulated from years of employment income. *Id.* According to Mr. Li, he purchased the Property in 2006 and paid the full purchase price in a single payment. *Id.* Regarding his income, Mr. Li cited his employment with Beijing Fukang Tiandi Technology Development Co., LTD ("Beijing Fukang"), where he has worked since October 2004. *Id.* He stated that between October 2004 and March 2006, he earned approximately ¥595,500 in after-tax income, which was sufficient to cover both the property purchase in April 2006 and his living expenses during that period. *Id.* at 10, 44. Mr. Li further asserted that in 2016, the Property was appraised at ¥5,655,883. *Id.* at 14, 80. He then used the Property as collateral to obtain a personal loan of ¥3,750,000 from Shanghai Pudong Development Bank ("SPD" Bank). *Id.* at 10. The loan proceeds were deposited into Mr. Li's bank account. *Id.* To convert the loan proceeds into U.S. dollars, Mr. Li used two unlicensed, third-party currency exchangers. *Id.* at 11. Mr. Li transferred the loan proceeds from his account to the exchangers' accounts in multiple transactions. *Id.* Mr. Li ultimately received $550,000 through various separate transactions with the exchangers. *Id.* In turn, Mr. Li remitted his investment funds in U.S. dollars, including a $500,000 capital contribution, to the NCE, Wade Park Finance Company A1, LLC. *Id.*

2. USCIS's Request for Evidence

In January 2024, USCIS issued Mr. Li a Request for Evidence ("RFE"). *Id.* at 295. Based on a review of the initial record of evidence, USCIS concluded that Mr. Li had not established his eligibility for the EB-5 Program. *Id.* Accordingly, it sought from Mr. Li additional documentation to confirm his eligibility. *Id.* Specifically, USCIS sought additional evidence showing that Mr. Li purchased the Property using his accumulated employment income, the funds transferred through the currency exchange swap derived from lawful sources, and the loan (which came due in 2021) was fully repaid. *Id.* at 297–300. It also requested that Mr. Li provide personal income tax documentation, foreign business registration records, and copies of any civil or criminal judgments entered against him, if any. *Id.* at 300–03.

In response to the RFE, Mr. Li again stated, among other things, that he had accumulated and saved his earnings from Beijing Fukang to purchase the Property and attached the same income certificate he provided in support of his original petition. *Id.* at 312. Mr. Li also submitted an affidavit stating that, due to the passage of time, he could not obtain certain documents. *Id.* at 316. Apart from the income certificate, Mr. Li provided no other documentation corroborating his claim that he accumulated and saved his earnings and that those funds were, in fact, used to purchase the Property. *See id.* at 310.

3. USCIS's Denial Decision

In September 2024, after reviewing his response to the RFE and the additional evidence attached thereto, USCIS denied Mr. Li's petition. *Id.* at 392. USCIS explained that Mr. Li failed to meet his burden of establishing that the funds invested in the NCE derived from lawful means, as he failed to document the path of investment funds. *Id.* at 394. According to USCIS, Mr. Li did not trace the funds he received from the unlicensed currency exchanger to a lawful source:

"[Mr. Li]'s funds were routed through . . . a third-party exchanger, and there is insufficient documentation to demonstrate the legitimacy of the Exchanger and his funds (such as licensing and registration documents)." *Id.* Moreover, Mr. Li failed to establish that he accumulated and saved sufficient employment earnings to purchase the Property and that those accumulated and saved earnings were actually used to purchase the Property, as Mr. Li claimed. *Id.* at 396. USCIS also noted that Mr. Li had failed to provide any evidence that the SPD Bank loan was paid in full. *Id.* at 397. Finally, USCIS explained that Mr. Li failed to provide personal income tax returns, citing 8 C.F.R. §§ 204.6(j)(3)(ii)'s requirement that petitions be accompanied by tax documentation. *Id.* Consequently, USCIS concluded that Mr. Li failed to establish his eligibility for the EB-5 Program. *Id.*

### C.  Procedural Background

After USCIS denied his petition, Mr. Li filed suit, alleging that USCIS's decision to deny his petition was arbitrary and capricious under § 706(2)(A) of the APA. Compl., ECF No. 1. After Defendants served the administrative record on Mr. Li, the parties filed cross-motions for summary judgment. *See* Pl.'s Mot. Summ. J., ECF No. 12; Defs.' Cross-Mot. Summ. J., ECF No. 13. In his motion for summary judgment, Mr. Li contends that he sufficiently documented the lawful source of his investment funds. Pl.'s Mot. Summ. J. at 5, 17–24. In particular, Mr. Li claims that the relevant regulations do not require him to document the path of funds of the third-party currency exchanger. *See, e.g.*, *id.* at 5.  Moreover, he argues that the "laundry list" of evidence USCIS required him to provide was immaterial or irrelevant. *Id.* at 5, 25–29. Defendants, on the other hand, maintain that Mr. Li failed to establish that the Property, which served as collateral for the SPD Bank loan, was lawfully acquired. Defs.' Cross-Mot. Summ. J. at 17–22. Defendants further assert that Mr. Li failed to trace the funds he transferred to the

third-party currency exchanger to a lawful source. *Id.* at 22–29. Finally, Defendants argue that Mr. Li failed to submit personal tax documentation as required by 8 C.F.R. § 204.6(j)(3)(ii), despite ample opportunity to do so. *Id.* at 29–31.

### III.  LEGAL STANDARD

"Ordinarily, summary judgment is appropriate when the pleadings and the evidence demonstrate that 'there is no genuine dispute as to any material fact.'" *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388, 393 (D.D.C. 2015) (quoting Fed. R. Civ. P. 56(a)). The standard set forth in Rule 56(a) does not apply, however, when a court is reviewing a final agency action under the APA.  *See Roberts v. United States*, 883 F. Supp.2d 56, 62–63 (D.D.C. 2012). "Instead of reviewing the record for disputed facts that would preclude summary judgment, the function of the district court is a more limited one: 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Ardmore Consulting Grp., Inc.*, 118 F. Supp. 3d at 393 (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)). This is a "narrow" inquiry; a court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Nevertheless, a reviewing court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the arbitrary-and-capricious standard, the agency must show that it considered the relevant evidence and offered a reasoned explanation that connects the facts it found to the decision it made. *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006). When an agency fails to provide such an explanation or when the record contradicts its conclusions, the court must set the action aside. *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999). Put simply, the

agency must articulate why it chose to act as it did. *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

### IV.  ANALYSIS

USCIS denied Mr. Li's petition for multiple reasons. These reasons include: (a) Mr. Li's inability to trace the funds of the third-party currency exchanger to a lawful source, (b) his inability to document the source of the funds used to purchase the Property, (c) his failure to provide any evidence that the loan was fully repaid, and (d) his failure to submit tax documents. In one way or another, Mr. Li challenges all these reasons, as he must in order to prevail on summary judgment. *See Mo*, 719 F. Supp. 3d at 28. So long as the Court is satisfied, however, that one of USCIS's reasons for denying Mr. Li's petition is a "sufficient and independent basis for its decision," the Court will affirm the agency's decision. *Sadeghzadeh v. USCIS*, 322 F. Supp. 3d 12, 17 (D.D.C. 2018); *see also Pierce v. SEC*, 786 F.3d 1027, 1034 (D.C. Cir. 2015) (*citing Carnegie Nat'l Gas Co. v. FERC*, 968 F.2d 1291, 1294 (D.C. Cir. 1992).

USCIS made clear that it denied Mr. Li's petition for the independent reason that he failed to demonstrate that the funds used to purchase the Property—which he pledged as collateral for the loan whose proceeds he invested in the NCE—derived from a lawful source. J.A. 397. Because the Court finds that this reason is a sufficient and independent basis for USCIS's decision to deny Mr. Li's petition, the Court need not address whether the other reasons for denying the petition are likewise sufficient. *See Y & N Bldg. Supply US LLC v. DHS*, No. 24-03593 (RC), 2025 WL 2801940, at *11 (D.D.C. Oct. 1, 2025) (citing *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1184 (D.C. Cir. 2003)). As explained below, Mr. Li failed to provide sufficient evidence to substantiate his claim that he purchased the Property using his accumulated earnings and therefore failed to document the complete path of his investment funds.

When Mr. Li first petitioned USCIS for EB-5 eligibility, he attempted to trace the source of his capital investment, explaining that he "acquired his investment funds through a personal loan of ¥3,750,000 using a property he owns as collateral." J.A. 10. Mr. Li further explained that he purchased the Property in 2006 using his years of accumulated employment income while employed at Beijing Fukang. *Id.* In particular, from October 2004 to March 2006, Mr. Li earned approximately ¥595,500 after-tax, which according to him, "was more than enough to enable him to purchase [the] property for ¥377,000 in April 2006" in one lump sum "and to cover his living expenses during these years." *Id.* In support of his claim, Mr. Li attached to his petition a purchase agreement for the property, documents demonstrating that the property was transferred and registered in Mr. Li's name, and an income certificate documenting Mr. Li's monthly earnings from Beijing Fukang since October 2004. *Id.* at 43–46, 48–66.

After reviewing Mr. Li's petition, USCIS sent Mr. Li an RFE, requesting that he provide corroborating evidence showing that the funds he used to purchase the Property derived from the earnings he purportedly acquired and accumulated from 2004 to 2006 while employed at Beijing Fukang. *Id.* at 298. Such evidence could include, for instance, complete banking statements or transfer documentation. *Id.* at 299. In USCIS's view, the income certificate Mr. Li provided did not establish that he actually accumulated and saved his Beijing Fukang earnings and used those accumulated and saved earnings to purchase the Property. *Id.* at 298–99.

In response to USCIS's RFE, Mr. Li reiterated that "the funds used to purchase the property located [sic] in April 2006 were Petitioner's accumulated employment income from 2004 to 2006." *Id.* at 306. According to Mr. Li, "due to the passage of time, bank statements are not available as banks are generally only required to keep records for up to seven years." *Id.* Mr. Li attached to his response the same income certificate he provided with his initial petition. *Id.* at

312. He also included an affidavit, stating that he purchased the Property using accumulated earnings and that there had been difficulties in obtaining documentation. *Id.* at 316. USCIS nevertheless denied the petition. *Id.* at 390–98. Although USCIS offered various rationales for the denial, it emphasized that it was "separately and independently" denying the petition because Mr. Li failed to provide sufficient corroborating evidence demonstrating that he had accumulated and saved his Beijing Fukang earnings and used those accumulated and saved earnings to purchase the Property in 2006. *Id.* at 397. It further explained that "going on record without supporting documentary evidence is not sufficient for purposes of meeting the burden of proof in these proceedings." *Id.*

The Court finds that USCIS's asserted reason is valid; the agency "articulate[d] a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. The plain language of Section 204.6(j)(3) requires that EB-5 petitioners document the source of investment funds. *Borushevskyi v. USCIS*, 664 F. Supp. 3d 117, 128 (D.D.C. 2023), *aff'd*, No. 23-5116, 2024 WL 2762146 (D.C. Cir. May 30, 2024). Courts in this district refer to this as an obligation for the investor to document "the complete path" of such funds. *Sadeghzadeh*, 322 F. Supp. 3d at 17–18; *see also Mo*, 719 F. Supp. 3d at 25 (collecting cases). "The relevant path includes tracing the funds from their point of origin through any intermediary accounts." *Truong v. USCIS*, No. 21-316, 2023 WL 4234658, at *6 (D.D.C. June 28, 2023) (citation modified). Such an obligation "requires more than a petitioner's affidavit." *R.L. Inv. Ltd. Partners v. I.N.S.*, 86 F. Supp. 2d 1014, 1026 (D. Haw. 2000), *aff'd*, 273 F.3d 874 (9th Cir. 2001). "Documentary evidence, in the form of, for example, tax returns and foreign business registration records, is required." *Id.*; *Borushevskyi*, 664 F. Supp. 3d at 129 (explaining that under the complete-path requirement, a petitioner must present "clear

10

documentary evidence" of the source of investment funds); *Truong*, 2023 WL 4234658, at *6 ("The petitioner must submit sufficient evidence to prove the complete path of their EB-5 investment funds, which . . . requires objective documentation tracing the transfer of funds." (citation modified)).

Here, Mr. Li failed to provide any documentation corroborating his claim that he used his accumulated employment earnings from Beijing Fukang to purchase the Property, which he claims served as collateral for the SPD Bank loan. Although Mr. Li submitted with his petition a certificate of income showing his earnings at the time of the Property's purchase, the certificate fails to establish that those earnings were, in fact, (1) accumulated and saved, and (2) used to purchase the property, as Mr. Li claims. Without additional evidence, it is unclear what source of funds Mr. Li used to acquire the Property. At most, the income certificate establishes that Mr. Li may have been able to afford the Property at that time. An EB-5 petitioner, however, "cannot establish that [he] is eligible for an EB-5 visa merely by showing that [he] was financially capable of affording [his] capital investment via lawfully obtained funds." *Binbin Lei v. USCIS*, No. 15-9654 FMO (PJWx), 2017 WL 5957641, at *4 n.2 (C.D. Cal. Mar. 23, 2017). Because an EB-5 petitioner must offer sufficient evidence demonstrating the complete path of his investments funds and Mr. Li offered no such evidence, USCIS's decision to deny Mr. Li's petition on that ground was not arbitrary or capricious. *See Borushevskyi*, 2024 WL 2762146, at *1

Nevertheless, Mr. Li contends that the agency's denial on this basis was arbitrary and capricious for two reasons. First, Mr. Li contends that evidence concerning events predating his purchase of the Property is immaterial. Pl.'s Mot. Summ. J. at 27–28. In his view, "the fact that [SPD] Bank loaned Plaintiff money secured by Plaintiff's property is sufficient" to establish that

11

the loan proceeds were lawfully derived. *Id.* To support this argument, Mr. Li relies on a single statement from *Zhang v. USCIS*, in which the D.C. Circuit held that cash proceeds from a loan may constitute "capital" for purposes of the EB-5 program. 978 F.3d 1314, 1317 (D.C. Cir. 2020). The court there observed that "the *bona fides* of a loan tend to show that its proceeds were lawfully acquired—an independent requirement for any asset to qualify as capital." *Id.* at 1322. Mr. Li takes this statement to mean that once a regulated financial institution extends a loan secured by property, USCIS need not—and should not—inquire further into the underlying asset. Pl.'s Mot. Summ. J. at 27 (asserting that regulated lenders generally avoid extending credit against criminally obtained assets). Mr. Li overlooks, however, that USCIS still retains "[the] ability to investigate whether the petitioner's invested cash loan proceeds were lawfully-acquired" under 8 C.F.R. § 204.6(e), and "an investor investing cash loan proceeds must still demonstrate that the proceeds were lawfully acquired." *Zhang v. USCIS*, 344 F. Supp. 3d 32, 53 (D.D.C. 2018) (explaining that "[w]here the petitioner obtains a loan from a lawful source (such as a reputable bank), the loan proceeds may, nevertheless, be unlawful if the capital was obtained by unlawful means (such as fraud on a loan application)."), *aff'd*, 978 F.2d 1314 (D.C. Cir. 2020). Thus, USCIS's inquiry into whether Mr. Li lawfully obtained the Property was entirely proper given Section 204.6(e)'s requirement that invested capital be lawfully acquired.

Second, Mr. Li contends that USCIS improperly required corroborating evidence beyond his income certificate, such as banking statements, to verify his claim that he purchased the Property in 2006 with accumulated employment earnings. Pl.'s Mot. Summ. J. at 25–29. Mr. Li contends that "no reasonable person would have access to such documents," as those documents predate the RFE by 18 years. *Id.* at 25. According to him, "he moved to Thailand with his family," "tried to comply with the demands" for additional evidence, and "credibly explain[ed]

12

why he could not." *Id.* Mr. Li thus concedes that he has not provided any additional evidence corroborating his claim that he purchased the Property in a single lump sum from his accumulated earnings.

Courts are certainly aware of the practical difficulty of gathering documentary evidence from many years ago, even decades ago. *See Mo*, 719 F. Supp. 3d at 31. Even so, if a petitioner is "unable to provide any documentation supporting [his] position because the relevant [records] no longer exist, the non-existence of those [records] does not . . . relieve [the petitioner] of his duty to provide objective supporting evidence." *Jian Zhang v. Nielsen*, No. CV 18-9799-JFW(JPRx), 2019 WL 5303276, at *7 (C.D. Cal. Oct. 17, 2019); *see also Mo*, 719 F. Supp. 3d at 31. Therefore, the fact that Mr. Li was unable to obtain additional documentation to support his EB-5 petition does not excuse him from his burden to provide sufficient "objective documentation" "to prove the complete path of [his] EB-5 investment funds." *Truong*, 2023 WL 4234658, at *6 (quoting *Borushevskyi*, 2023 WL 2663006, at *17). Because Mr. Li provided no such documentation apart from his income certificate, which he concedes, it was not arbitrary and capricious for USCIS to deny his petition on that basis. *See Mo*, 719 F. Supp. 3d at 31. Accordingly, the Court affirms USCIS's decision to deny Mr. Li's petition.[1]

---

[1] Although the Court concludes that Mr. Li's failure to trace the complete path of his EB-5 investment funds provides a sufficient and independent basis to uphold USCIS's denial of his petition (and therefore need not consider whether the agency's additional grounds were likewise sufficient, *see Y & N Bldg. Supply US LLC*, 2025 WL 2801940, at *11 (citing *BDPCS, Inc.*, 351 F.3d at 1184)), the Court further finds that the denial was also justified because Mr. Li failed to submit the necessary tax records required by regulation. *See* J.A. 12–13, 310, 397. Under § 204.6(j)(3)(ii), an EB-5 petition must be accompanied by the petitioner's personal tax returns filed within the preceding five years. 8 C.F.R. § 204.6(j)(3)(ii). Mr. Li was on notice of this requirement at the time he filed his petition, and the relevant tax documents would not have been outdated at that time. Indeed, according to Mr. Li, document retention policies typically require preservation of records for six to seven years, a period that would have encompassed the five years of tax documents required by the regulation at the time of the petition's filing. *See* Pl.'s Mot. Summ. J. at 25–26.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 12) is

**DENIED**; and Defendants' Cross-Motion for Summary Judgment (ECF No. 13) is **GRANTED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 23, 2026                                    RUDOLPH CONTRERAS
                                                         United States District Judge